Whalet, Judge,
delivered the opinion of the court:
The plaintiff brings this suit to recover damages for a breach of contract growing out of an alleged misrepresentation.
On July 2, 1930, the Arlington Memorial Bridge Commission advertised for bids “for furnishing all labor, plant and equipment, and materials, and constructing therewith the fenders in the navigation channel through the Bascule Draw Span opening of the Arlington Memorial Bridge, Washington, D. C.” The plaintiff received a copy of the plans and specifications of the projected work for bidding purposes. Among the general provisions of the specifications were the following:
10. Bidders to visit site. — Bidders are expected to visit the site of the work and to inform themselves as to all existing conditions. They are expected to exam *90 ine the work already in place and to familiarize themselves as to the progress and schedules of all work which may be under way and which might in any way affect the progress of their work. * * * Failure to do so will in no way relieve the successful bidder from the necessity of furnishing all equipment and materials, and performing all work required for the completion of the contract in conformity with the specifications.
No allowance will be made for the failure of a bidder correctly to estimate the difficulties attending the execution of the work.
In the specifications the plaintiff’s attention was drawn to the fact that the Phoenix Bridge Company was then erecting the Bascule Draw Span and the actual operations of the plaintiff’s contract would have to await the completion of the contract of the Phoenix Bridge Company. Plaintiff had knowledge, or could have acquired knowledge, that the work of the Phoenix Bridge Company required the driving of piles and it was also aware at that time that the work of the other contractor had not been completed. On September 25, 1930, the plaintiff entered into a contract with the defendant whereby it agreed to furnish the materials and do the work as called for in the plans and specifications for the sum of $49,711.96.
The contract did not disclose the presence of any obstructions, the contract drawings indicating only the mud-line and the underlying surface of bedrock on which the piles were to repose. It does not appear that the drawings were for the purpose of showing obstructions, if any existed. That such was their purpose is negatived by the notice to the bidder that he was expected to visit the site, and that no allowance would “be made for the failure of a bidder correctly to estimate the difficulties attending the execution of the work.” After the plaintiff commenced the driving of the piles, it encountered obstacles close to the abutments in the form of heavy timbers that had been used by the former contractor to build the necessary falsework or cofferdams, and left there in the mud. It was necessary for the plaintiff to remove these obstructions or to drive the concrete piles through the embedded timbers. The extra work necessarily *91 entailed in overcoming these obstructions imposed upon the plaintiff an additional cost of $4,259.01.
The plaintiff contends that the Government, by the omission in contract or contract drawings to disclose the presence of the obstructions afterwards discovered, misled it into the belief that there were no obstructions to be encountered. In other words, this amounted to a warranty as to the conditions to be met by the plaintiff in the performance of its work. The Government contends that there was no misrepresentation, that obstacles met by the contractor were such that they could have been discovered upon a careful inspection of the site, that plaintiff had been notified in advance by the specifications that it was to make its own inspection, that the obstructions were unknown to both parties at the time of entering into the contract, and that as a result of all this the Government is not liable. Under the same specifications which required that the plaintiff should investigate the conditions under which the work was to be performed, the plaintiff was apprised of the fact that another contractor was then performing piling work. It was also aware, being an experienced contractor, of the manner in which such work is conducted. Its investigation may or may not have been adequate, but before entering actively upon the performance of the contract it was possible for plaintiff to ascertain whether the site had been cleared by the previous contractor. However, it took its chances as to obstructions which might have been left by the previous contractor and only discovered after work had been started that obstacles did exist. The Government had no more knowledge or means of acquiring knowledge of these obstructions than the plaintiff. The obstructions were such that neither of the parties to the contract knew or could have known of them without an investigation of the conditions after the completion of the original contract. This was just as much the duty of the plaintiff as of the defendant. It was a case of misfortune on the part of the plaintiff and not a case of misrepresentation on the part of the Government. When the bids were asked for and when the contract was entered into there was no knowledge on the part of the Government of any impediments. There was *92 no misrepresentation of conditions or concealment of knowledge. As was said in tbe case of MacArthur Brothers, 258 U. S.6:
To hold the Government liable under such circumstances would make it insurer of uniformity of all work, and cast upon it responsibility for all the conditions which a contractor might encounter and make the cost of its projects always an unknown quantity. * * *
The Government is not liable where no misrepresentation has been made, and there is no proof of anything in this case of a nature to mislead an ordinarily cautious contractor, or of any knowledge on the part of a Government official that would, if disclosed, have put the plaintiff upon notice of the obstacles encountered in the course of its work.
The petition is dismissed. It is so ordered.
Williams, Judge; LittletoN, Judge; GREEN, Judge; and Booth, Chief Justice, concur.